UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RA PTAH TARHAQA ALLEN,
LEONARD WALTERS,

                            Plaintiffs,         07 Civ. 8682 (RPP)

                  - against -         **OPINION AND ORDER**

N.Y.C. POLICE DEPARTMENT, JULIO
GONZALEZ, VINCENT RUIZ, RANDYS
FIGUEREO, N.Y.C. CORPORATION
COUNSEL

                            Defendants.
----------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      Plaintiffs Ra Ptah Tarhaqa Allen and Leonard Walters bring this *pro se* action under 42 U.S.C. §§ 1983, 1985 and 1986 as well as 18 U.S.C §§ 241 and 242 against Defendants, New York City Police Department ("NYPD"), New York City Corporation Counsel, Police Officer Julio Gonzalez ("Officer Gonzalez"), Police Officer Vincent Ruiz ("Officer Ruiz") and Police Officer Randys Figuereo ("Officer Figuereo") (collectively, "Defendants"). Plaintiffs allege violations of rights under the United States Constitution as well as corresponding state law claims of false imprisonment, unlawful interrogation, and illegal search and seizure. On July 31, 2009, Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, complying with Local Civil Rules 56.1 and 56.2. On October 26, 2009, Plaintiffs filed their opposition to Defendants' motion.[1] On November 23, 2009, Defendants

---

[1] Plaintiffs' opposition was incorrectly docketed as a separate motion and captioned by Plaintiffs as a "motion for a dismissal of summary judgment." In substance, the papers filed on October 26, 2009 are a memorandum in opposition with accompanying exhibits, and the Court construes them as such. The memorandum and exhibits filed by Plaintiffs on October 26, 2009 are collectively referred to herein as "Pl. Opp'n."
     Because Plaintiffs are proceeding *pro se*, the Court will read their papers liberally, drawing the strongest possible inference in Plaintiffs' favor. See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). Because

filed their reply memorandum of law in further support of their motion for summary judgment. For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part.

## I. Factual Background

The following facts are drawn from the Plaintiffs' Verified Amended Complaint filed February 22, 2008 ("Compl."), Defendants' Statement of Undisputed Facts pursuant to Local Rule 56.1 dated July 31, 2009 ("Def. 56.1"), excerpts of the depositions of each Plaintiff ("Allen Dep." and "Walters Dep.") attached as exhibits D and E to the Declaration of Brian Francolla dated July 31, 2009 ("Francolla Decl."), and the Declaration of Police Officer Julio Gonzalez dated July 28, 2009 ("Gonzalez Decl."), Francolla Decl., Exhibit F.[2]

### A. Defendants' Initial Observations of Allen

On June 1, 2007, Officers Gonzalez, Ruiz, and Figuereo (the "Officer Defendants") were assigned to patrol the Taft Housing Development of the New York City Housing Authority. (Gonzalez Decl. ¶ 8.) At the time of the events giving rise to this action, the Officer Defendants were patrolling 1345 Fifth Avenue, which is located within the Taft Housing Development. (Id. ¶ 9.)[3] A key was required to enter 1345 Fifth Avenue. (Def 56.1 ¶ 7; Allen Dep. at 49; Walters Dep. at 29-30.) There was a sign in the building cautioning that people "will be subject to arrest for trespassing or loitering in the stairwell." (Allen Dep. at 52; Def. 56.1 ¶ 5.) At approximately 8:20 pm, Allen entered 1345 Fifth Avenue to drop off a package at his sister-in-law's apartment.

---

Plaintiffs's Amended Complaint is verified by both Plaintiffs, the Court will treat it as Plaintiffs' Rule 56.1 statement. In addition, Plaintiffs' relevant statements in depositions will be considered by the Court.
[2]   The testimony and other evidence submitted in connection with this motion conflict in some respects. For the purpose of a motion for summary judgment, in determining whether there exists a genuine issue of material fact, any conflicting facts are construed in the light most favorable to Plaintiffs, the non-moving parties.
[3]   In his declaration, Officer Gonzalez identifies the building in question as "1345 Madison Avenue." This appears to be a mistake as the correct address is "1345 Fifth Avenue." (See Pl. Opp'n, Ex. B; Walters Dep. at 13.)

(Def. 56.1 ¶ 6; Compl. ¶ 1.)[4]  The door to the building was open (Allen Dep. at 50), and the Officer Defendants observed Allen walk in without using a key.  (Allen Dep. at 48-49; Def. 56.1 ¶ 8; Gonzalez Decl. ¶ 12.)[5]  Allen testified that he did not use the call box – in his words, he did not press the "access buttons" – in order to enter to the building (Allen Dep. at 50), and he did not sign in on the tenant patrol sign in sheet in the lobby for persons who did not live in the building.  (Id. at 57.)  Allen did not advise Plaintiff Walters or Plaintiff Walters' wife (who is Allen's sister-in-law) that he would be coming over to their apartment on June 1, 2007.  (Id. at 48.)

**B. Defendants' Interactions with Allen on the First Floor**

On his way back down to the building's lobby, after visiting his sister-in-law's apartment on the eighth floor, Allen exited the elevator on the second floor because the elevator occasionally broke down before reaching the first floor.  (Def. 56.1 ¶¶ 13, 14.)  While he was walking from the elevator towards the stairwell, Allen passed an African-American male.  (Id. ¶ 15; Allen Dep. at 66.)  The Officer Defendants stopped Allen at the bottom of the stairwell and Officer Ruiz asked Allen why he had taken the stairs instead of the elevator.  (Compl. ¶ 1; Allen Dep. at 67-68.)  Allen responded "Why I can't take the stairs?"  (Def. 56.1 ¶ 17; Allen Dep. at 69-70.)  Officer Gonzalez then asked Allen whether he knew the African-American man who passed him, and Allen responded, "Am I supposed to know him?"  (Def. 56.1 ¶ 18; Allen Dep. at 68.)

---

[4]  In the Amended Complaint, Plaintiffs identify the building in question as "1354 Madison." (Compl. ¶ 1.) This too appears to be a mistake. Inconsistencies in the address of the building are immaterial as the parties agree that the Officer Defendants and Plaintiffs were in the same building and encountered each other on June 1, 2007.

[5]  In their opposition, Plaintiffs note that during the Civilian Complaint Review Board (CCRB) investigation of this incident, the three Officer Defendants gave different accounts of the manner in which Allen entered the building, however, the CCRB conclusion also noted that each Officer Defendant agreed that Allen entered the building without using a key. (Pl. Opp'n, Ex. B at 7.)

3

When asked for identification, Allen gave the Officer Defendants his driver's license which indicated that he lived in a different building, 1694 Madison Avenue, which is also in the Taft Housing Complex.  (Def. 56.1 ¶ 19; Allen Dep. at 74-75.)  Allen told the Officer Defendants that he had been visiting apartment 8-B.  (Def. 56.1 ¶ 20; Allen Dep. at 76.)  Officer Figuereo went upstairs to verify that Allen had come from apartment 8-B while the other two officers stayed with Allen.  (Allen Dep. at 75-76.)  Allen did not tell the Officer Defendants at this point that he sister-in-law was sleeping.  (Def. 56.1 ¶ 23; Allen Dep. at 77.)  Officer Figuereo returned, reporting that nobody had answered the door.  (Def. 56.1 ¶ 22; Allen Dep. at 77.)  The Officer Defendants then accompanied Allen to the eighth floor.  (Def. 56.1 ¶ 24; Allen Dep. at 77-78.)[6]

## C.  Defendants' Interactions with Allen and Walters on the Eighth Floor

Once on the eighth floor, Officer Figuereo knocked on the door to apartment 8-B and no one responded.  (Allen Dep. at 80-81.)  Allen still did not tell the Officer Defendants that his sister-in-law was sleeping.  (Id. at 81.)  Though the exact sequence of events is not clear, Plaintiff Allen claims that Officer Gonzalez asked him what he was carrying in his bag.  (Compl. ¶ 2.)  Allen responded that he was carrying flyers "to by [sic] food."  (Id.)  Officer Gonzalez took the bag and looked inside it.  (Id.)  After Officer Figuereo had knocked on the door to apartment 8-B and received no answer, he frisked Allen.  (Def. 56.1 ¶ 28; Allen Dep. at 81.)  During the frisk, Officer Figuereo placed his hand in Allen's left, right and back pockets (Allen Dep. at 81), and took Allen's keys from one of his pockets (Compl. ¶ 2).

---

[6]  Though in their 56.1 statement, Defendants state that Allen claims the Officer Defendants "escorted" him to the eighth floor, the term "escorted" appears to be counsel's characterization as it does not appear in the record evidence before the Court.  See Compl. ¶ 1 ("Gonzalez said 'sir let's go' we entered the lobby and I pushed the elevator button with my cane.  I and the officers entered the elevator to the 8th floor."); Allen Dep. at 77 (stating that he "went up the stairs with the officers"); Gonzalez Decl. ¶ 17 ("I, along with Police Officers Ruiz and Figuereo, accompanied plaintiff Allen up to the 8th floor in order to verify whether he was a proper guest in the building.")

4

In their statement of facts and accompanying declaration, Defendants make no mention of Allen's bag or the search of Allen's pockets. Instead, Officer Gonzalez asserts that he performed a "limited pat-frisk in order to ensure that plaintiff Allen was not in possession of a weapon so as to ensure my safety and the safety of Police Officers Ruiz and Figuereo." (Gonzalez Decl. ¶ 24.)

As of June 1, 2007, Plaintiff Walters, who is Allen's brother-in-law, lived at 1345 Fifth Avenue, Apartment 8-B. (Def. 56.1 ¶ 3; Walters Dep. at 13.) Walters arrived on the eighth floor where he saw the Officer Defendants and Allen standing in the hallway. (Def. 56.1 ¶ 29; Walters Dep. at 38, 42.) Walters voluntarily gave the Officer Defendants his identification and asked what the problem was. (Def. 56.1 ¶ 30; Walters Dep. at 42-43.) Walters told the Officer Defendants that Allen was his brother-in-law, however, when asked Allen's name, Walters could not recall it. (Walters Dep. at 43.) Walters observed one of the Officer Defendants take a key from Allen. (Id. at 42, 47.)

According to Allen, Officer Gonzalez put the key in the door of apartment 8-B and leaned into the apartment for five or six seconds before exiting the apartment and closing the door. (Allen Dep. at 86-87.) Officer Gonzalez's feet remained outside the apartment. (Id. at 88.) Walters also observed Officer Gonzalez enter the apartment and testified that Officer Gonzalez remained in the apartment for ten to fifteen seconds. (Walters Dep. at 48-49.) Defendants claim, however, that Officer Gonzalez merely knocked on the door which began to open slightly, and that he immediately closed the door. (Gonzalez Decl. ¶¶ 19-22.)

Walters offered to wake up his wife before Officer Gonzalez entered the apartment. (Allen Dep. at 86; Compl. ¶¶ 3, 4.) Either Officer Gonzalez or Ruiz told Walters that he would be arrested for interfering with a police investigation if he did so. (Allen Dep. at 86; Compl. ¶

5

4.)  When Walter said "You can't tell me I can't enter my apartment," Officer Gonzalez told Walters to "Shut up."  (Compl. ¶ 4; Allen Dep. at 86.)

After Officer Gonzalez closed the door to apartment 8-B, he returned Allen's bag and keys and told Allen he could go.  (Walters Dep. at 50; Compl. ¶ 4.)  As Allen was walking back towards the elevator, Officer Ruiz said "Will [sic] be watching you" and "Have a nice day."  (Compl. ¶ 4.)

Neither Allen nor Walters was arrested as a result of the events on June 1, 2007.  Walters was not frisked by any of the Officer Defendants.  (Allen Dep. at 98.)  Walters moved to a new home due to this incident.  (Walters Dep. at 78-79.)  However, Plaintiffs are not alleging that they have suffered any physical, mental or financial injuries.  (Def. 56.1 at ¶ 32; Allen Dep. at 109; Walters Dep. at 78-79.)

## II.  Applicable Law

Summary judgment is appropriate if the evidence offered demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970), and the Court must view the facts in the light most favorable to the non-moving party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  The non-moving party, however, "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful."  Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations omitted).  Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

### III.  Discussion

Plaintiffs assert a variety of claims under both federal and state law.  Plaintiffs do not explain how their various theories of liability apply to the facts they allege.  Instead, in their Amended Complaint, Plaintiffs merely list a number of statutes, excerpts of cases, and what appear to be sections of treatises.  Because Plaintiffs are proceeding *pro se*, the Court will read their pleadings to raise the strongest arguments that they suggest in spite of the lack of formal legal pleading.  See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999).  Each category of potential claim is addressed in turn below.

**A.  The Claim of Conspiracy**

Allen and Walters allege a conspiracy to abridge their rights to equal protection in violation of 42 USC §§ 1983, 1985 and 1986.  In order to make out a *prima facie* conspiracy claim under § 1983, a plaintiff must establish:  (1) an agreement between two or more state actors; (2) concerted acts to inflict an unconstitutional injury; and (3) an overt act in furtherance of the goal.  Carmody v. City of New York, No. 05 Civ. 8084 (HB), 2006 WL 1283125, at *5 (S.D.N.Y. May 11, 2006) (citing Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002)).  Here, Plaintiffs allege only a single encounter during which each of the Officer Defendants allegedly violated Plaintiffs' constitutional rights.  There is no allegation of an agreement between two or more actors to accomplish that purpose, nor does the evidence submitted imply such an agreement, which is a necessary element of a conspiracy claim under § 1983.  Because Plaintiffs' Verified Amended Complaint fails to describe a factual basis or

specific instances of misconduct to support their allegation of conspiracy, Defendants motion for summary judgment is granted as to Plaintiffs' conspiracy claims under § 1983.

Because the same standard applies to a claim under § 1985, Defendants' motion is granted as to Plaintiffs' § 1985 conspiracy claims as well.  Carmody, 2006 WL 1283125, at *5 (citing Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003)).  Finally, because there can be no § 1986 violation without a § 1985 violation, Defendants' motion is granted as to Plaintiffs' § 1986 claims.  Johns v. Home Depot U.S.A., Inc., 221 F.R.D. 400, 407 (S.D.N.Y. 2004) (stating that a plaintiff's § 1986 claim is futile if he cannot prove facts to support a claim under § 1985).

## B. The Claim of Racial Discrimination

In order to make out a *prima facie* claim for racial discrimination under 42 U.S.C. § 1981 a plaintiff must establish that: (1) he is a member of a racial minority; (2) defendants intended to discriminate against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute.  Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).  In order to survive a motion for summary judgment, a plaintiff cannot merely present "conclusory allegations" of discrimination, but must offer "concrete particulars" to substantiate his claim.  Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985).  Plaintiffs' racial discrimination claim cannot survive a motion for summary judgment because the Amended Complaint does not set forth any facts from which one could conclude that Plaintiffs were discriminated against on the basis of race, as required in a § 1981 claim.  Nor does the Amended Complaint contain factual claims that can be liberally read to contain evidence of a racial motive for Defendants' actions, which is necessary in opposing a motion for summary judgment.

8

Similarly, Plaintiffs' claim based on the Equal Protection clause of the New York State Constitution cannot survive Defendants' motion for summary judgment. Because the New York State Constitution's equal protection guarantee in Article 1 §11 is "coextensive" with that of the United States Constitution, a plaintiff who cannot establish a violation of federal equal protection rights cannot establish that his rights were infringed under the state constitution. Coakley v. Jaffe, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999), aff'd, 234 F.3d 1261 (2d Cir. 2000).

**C. The Claim of Violations of Constitutional Rights under 18 U.S.C. §§ 241 and 242**

Plaintiffs' claims under 18 U.S.C. §§ 241 and 242 are dismissed because those sections are criminal statutes, which provide criminal remedies for violations of certain constitutional rights, and do not confer a private right of action. Sauls v. Bristol-Myers Co., 462 F. Supp. 887, 889 (S.D.N.Y. 1978); see also Williams v. M.C.C. Inst., No. 97 Civ. 5352 (LAP), 1999 WL 179604, at *3 n.4 (S.D.N.Y. Mar. 31, 1999) (citing Williams v. Halperin, 360 F. Supp. 554 (S.D.N.Y. 1973)).

**D.  42 U.S.C. § 1983**

To establish a *prima facie* case under 42 U.S.C. § 1983,[7] Plaintiffs must establish two elements: (1) the challenged action occurred "under color of law" and (2) the action is a deprivation of a constitutional right or a federal statutory right. West v. Atkins, 487 U.S. 42, 48 (1988). Here, Plaintiffs bring a claim against police officers for conduct pursuant to their governmental duties and powers, and therefore the alleged action occurred under color of law. See Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (police officers who identify themselves are acting under color of law). The second issue is whether Plaintiffs have alleged a

---

[7]   42 U.S.C. § 1983 states that "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ."

constitutional deprivation. If there is no constitutional violation, there can be no liability, either on the part of the individual officer or the government body. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

**1. Illegal Seizure**

(a) Mr. Allen

The initial stop and questioning of Allen in the stairwell on the first floor of 1345 Fifth Avenue was a consensual encounter, and not a seizure. Where an individual willingly speaks to law enforcement personnel, the encounter does not constitute a seizure or arrest and may be initiated "without any objective level of suspicion." United States v. Glover, 957 F.2d 1004, 1008 (2d Cir. 1992) (citing United States v. Hooper, 935 F.2d 484, 490 (2d Cir. 1991)).

After the initial contact in the first floor stairwell, after Allen had identified himself as a non-resident and stated he had been visiting apartment 8-B, and after Officer Figuereo went upstairs to verify that Allen had come from apartment 8-B and reported that no one answered the door, Gonzalez simply said "Let's go" (Allen Dep. at 77), and the Officer Defendants accompanied Allen to the eighth floor "in order to verify whether he was a proper guest in the building." (Gonzalez Decl. ¶ 17). At no point does Plaintiff Allen suggest he was threatened or forced to accompany the Officer Defendants, and Plaintiffs state in their Verified Amended Complaint that Allen – not any of the Officer Defendants – pressed the elevator button in order to return to the eighth floor with the Officer Defendants. (Compl. ¶ 1.) Whether an individual's consent to accompany law enforcement officers was voluntary or coerced is to be determined by the totality of all the circumstances. United States v. Mendenhall, 446 U.S. 544, 557 (1980) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)). See id. at 557-58 (where agents stopped and questioned a suspect and then asked her to accompany them to the Drug

Enforcement Administration Office without any threats or show of force, there was voluntary consent and no seizure).

While it is unclear whether the act of Allen accompanying the Officer Defendants to the eighth floor constituted a seizure for Fourth Amendment purposes, assuming in Plaintiffs' favor that Allen was "escorted" upstairs and the interaction constituted a "seizure," any such seizure was justified.  Police may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause.  United States v. Sokolow, 490 U.S. 1, 7 (1989) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)).  Given the Officer Gonzalez's observation of Allen entering the building without a key, the notice in the building prohibiting trespassing, Officer Gonzalez's awareness that 1345 Fifth Avenue is a high-crime housing project, Allen's non-responsive answers to questions about why he did not use the elevator when coming down to the lobby, and Officer Figuereo's inability to verify Allen's explanation for his presence by knocking on the door to apartment 8-B, any brief "seizure" of Allen for the purpose of attempting to verify Allen's stated reason for being on the premises was based on reasonable suspicion supported by articulable facts that criminal activity may have been afoot.  Id. Furthermore, the Officer Defendants' reasonable suspicion was bolstered when Walters arrived and stated that Allen was his brother-in-law, yet could not identify Allen by name.

(b) Mr. Walters

Walters was never arrested or frisked, and it is undisputed that Walters voluntarily approached the Officer Defendants, gave them his identification, and asked what the problem was.  Because Plaintiffs offered no evidence that "in view of all of the circumstances surrounding the incident, a reasonable person [in Walters' situation] would have believed that he

11

was not free to leave," Mendenhall, 446 U.S. at 554, Walters was not seized for Fourth Amendment purposes.

Because there are no material facts in dispute as to whether Plaintiffs were illegally seized for Fourth Amendment purposes, Defendants' motion for summary judgment is granted as to Plaintiffs' § 1983 claims based on illegal seizure.

### 2. Unlawful Interrogation

Although Plaintiff Allen claims that he was illegally interrogated by the Defendants when he was initially stopped, the questioning of Allen did not trigger Fifth Amendment rights. As discussed *supra*, the questioning was part of a consensual encounter during which Allen responded to the Officer Defendants' questions and Allen provided his identification. In a consensual encounter "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual . . . as long as the police do not convey a message that compliance with their requests is required." Florida v. Bostick, 501 U.S. 429, 434-35 (1991) (internal citations omitted). Plaintiffs provide no evidence that the Officer Defendants indicated to Allen – in any way – that compliance with their questioning was required. Therefore, Defendants' motion for summary judgment is granted as to Plaintiff Allen's claim of unlawful interrogation.[8]

---

[8] Plaintiffs mention false imprisonment and unlawful detention in their Amended Complaint. In a claim for false arrest or imprisonment under New York state law, a plaintiff must show that any confinement was not justified or privileged. Hall v. City of White Plains, 185 F. Supp. 2d 293, 299 (S.D.N.Y. 2002) (citing Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975); Posr v. Doherty, 944 F.2d 91, 97 (2d Cir. 1991)). As previously discussed, Walters was not "confined" because he was neither stopped nor seized. Any confinement of Allen was a justified investigatory stop because the Officer Defendants had reasonable suspicion that Allen was trespassing. See Hall, 185 F. Supp. 2d at 301 (citing People v. Cantor, 324 N.E.2d 872, 877 (N.Y. 1975)) (stating that officers are permitted to forcibly stop and detain a person for questioning where the officer has reasonable suspicion that a suspect has committed, is committing, or is about to commit a crime).

A § 1983 claim based on false imprisonment provides the same result because New York State law applies in § 1983 claim. See Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (stating that false imprisonment claims brought under § 1983 involve substantially the same elements as New York state false imprisonment claim). Accordingly, to the extent the Amended Complaint can be read to state claims for false imprisonment and unlawful detention, Defendants' motion for summary judgment is granted as to those claims.

### 3. Illegal Search under Fourth Amendment

Plaintiffs allege three different illegal searches: the search of Allen's bag; the search of Allen's pockets during a frisk; and the search of Walters' apartment. Defendants dispute Plaintiffs' version of the facts as it relates to the alleged illegal searches. For the purposes of determining whether a genuine issue of material fact exists on a summary judgment motion, the Court resolves all factual disputes in favor of the non-moving party, in this case, Plaintiffs.

(a) <u>Search of Allen's Bag and Pocket</u>

During a <u>Terry</u> stop, police may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause. <u>Sokolow</u>, 490 U.S. at 7 (citing <u>Terry</u>, 392 U.S. at 30). As part of a <u>Terry</u> stop, an officer may conduct a pat-down frisk in which he may conduct a "carefully limited search of the outer clothing…in an attempt to discover weapons." <u>Terry</u>, 392 U.S. at 30.

Officer Gonzalez's search of Allen's bag exceeded the scope of <u>Terry</u> pat-down which is limited to outer clothing. Officer Figuereo's search of Allen's pockets similarly exceeded the permissible scope of a <u>Terry</u> stop because no evidence is presented that he first did a pat-down of the pockets to see whether they contained weapons. See <u>Sibron v. New York</u>, 392 U.S. 40, 65 (1968) (holding that where an officer made no "limited exploration for arms" and simply thrust his hand into the defendant's pocket, the search exceeded the scope of <u>Terry</u>).

(b) <u>Search of Walter's Apartment</u>

Warrantless searches of private homes are presumed to be unreasonable. <u>Tierney v. Davidson</u>, 133 F.3d 189, 196 (2d Cir. 1998) (citing <u>Payton v. New York</u>, 445 U.S. 573, 586 (1980)). Exceptions to the warrant requirement for a search include a search incident to arrest,

13

exigent circumstances, hot pursuit, and certain automobile searches. See Texas v. Brown, 460 U.S. 730, 735-36 (1983) (collecting cases). None of these exceptions apply in the instant case. Warrantless searches are also permissible if there is consent. See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). However, in the instant case, Defendants do not claim that they received consent. Therefore, if Plaintiffs' version of the facts were proven at trial, namely that Officer Gonzalez opened the door to Walters' apartment and leaned or stepped inside, Plaintiffs would have proved an illegal entry into Walters' apartment.[9]

### 4. Qualified Immunity

Because Plaintiffs have established genuine issues of material fact as to whether Plaintiffs were subject to illegal searches, the Court must next consider whether the Officer Defendants are entitled to qualified immunity.

Under the doctrine of qualified immunity, public officials are not held liable for civil damages as long as their conduct does not violate a clearly established statutory or constitutional right. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether a right was clearly established at the time of the conduct in question the Second Circuit considers three factors:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993) (citation omitted). Even when a plaintiff's federal rights are clearly defined, qualified immunity might still be available as a bar to

---

[9] Plaintiffs assert additional illegal search and seizure claims based on Article 1 § 12 of the New York State Constitution. Although New York State has adopted expanded protections against unreasonable searches and seizures, see, e.g., People v. Hollman, 590 N.E.2d 204, 211-12 (N.Y. 1992), a federal court must use federal law to evaluate search and seizure issues. See Woods v. Candela, 921 F. Supp. 1140, 1144 (S.D.N.Y. 1996). Furthermore, claims under the New York State Constitution should be dismissed where there is an adequate federal remedy for violation of state constitutional rights. See Li v. Aponte, No. 05 Civ. 6237 (NRB), 2008 WL 4308127, at *11 (S.D.N.Y. Sept. 16, 2008).

14

plaintiff's suit if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (citing Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir.1990)). This objective reasonableness test is met if "officers of reasonable competence could disagree" on the legality of a defendant officer's actions. Malley v. Briggs, 475 U.S. 335, 341 (1986).

(a) Search of Allen's Bag and Pockets

It was objectively reasonable for the Officer Defendants to believe that they were not violating Allen's rights when they searched Allen's bag and pockets. Although no formal arrest was ever made, at the time the Officer Defendants searched Allen's bag and pockets, the Officer Defendants had probable cause to believe Allen was trespassing and might be in possession of burglar's tools, and had reason to believe that they were conducting a valid search incident to arrest. Allen was a visitor to the building who Officer Gonzalez had observed enter without a key and without signing in. Allen's answer to questions about his use of the stairs as opposed to the elevator was non-responsive, and Walters, who stated Allen was his brother-in-law, was unable to identify Allen by name. Accordingly, the Officer Defendants had probable cause to believe Allen was trespassing, possibly to commit theft.

A search incident to an arrest based on probable cause is an exception to the warrant requirement. United States v. Robinson, 414 U.S. 218, 235 (1973). There is probable cause to make a warrantless arrest when at the time of the arrest "the facts and circumstances within the [officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964).

15

The facts and circumstances in the instant case were sufficient to lead a prudent man to believe that Allen was trespassing, possibly to commit theft. Police Officers have been held to have reasonable suspicion to detain a suspect in a public housing development known to be a "troublesome building" when the suspect entered the building without a key and gave a "nervous and confused response when asked whether he lived in the building and where he was going." United States v. Pitre, No. 05 Cr. 0078 (MBM), 2006 WL 1582086, at *1, *4 (S.D.N.Y. June 6, 2006). As in Pitre, Allen entered a public housing building known to be a high crime area without using a key or buzzing an apartment with the call box, and Allen responded suspiciously and evasively to the Officer Defendants' questions.[10] Further, when the Officers Defendants knocked on the door of apartment 8-B on two separate occasions without receiving an answer, they had a reasonable basis to believe that Allen was lying about visiting his sister-in-law. In light of the facts and circumstances showing that Allen: (1) was not a resident of the building; (2) had entered the building without using the call box to buzz an apartment; (3) responded to questions in an evasive and defensive manner; and (4) appeared to have lied about recently visiting apartment 8-B, the Officer Defendants had probable cause to arrest Allen for trespassing.

Once they had probable cause to arrest Allen, the Officer Defendants could legally search Allen's pockets and bag as part of a valid search incident to arrest. See Robinson, 414 U.S. at 223, 226 (stating that an officer may search a suspect's person incident to an arrest and may reach into his pockets); United States v. Hayes, 553 F.2d 824, 826 (2d Cir. 1977) (holding that search of suspect's briefcase was lawful because there was probable cause for his arrest). Whether Allen was formally under arrest at the time that the searches took place is not consequential because a search may take place before a formal arrest. The Second Circuit has

---

[10] When asked why he had taken the stairs instead of the elevator, Allen responded "Why I can't take the stairs?" and when asked whether he knew the man who had just passed him on the stairs, Allen responded "Am I supposed to know him?" (Allen Dep. at 68-70.)

16

held that "[t]he mere fact that [an officer] reversed the procedure, conducting the search before the arrest, did not render it illegal as long as probable cause to arrest existed at the time of the search." United States v. Ricard, 563 F.2d 45, 49 (2d Cir. 1977) (quoting United States v. Jenkins, 496 F.2d 57, 73 (2d Cir. 1974)).

At the very least, officers of reasonable competence could disagree as to the constitutionality of the Officer Defendants' actions. Specifically, officers of reasonable competence could disagree as to whether the search occurred when the Officer Defendants merely had a reasonable suspicion that a crime was afoot or if the search occurred after the Defendants had probable cause that Allen was trespassing. The fact that Allen was never in fact arrested does not change the fact that a reasonably competent officer could believe that, given the facts and circumstances of the encounter, the Officer Defendants were performing a valid search incident to an arrest. The Officers Defendants should not be faulted due to the simple fact that, while they were conducting the search, they were able to corroborate Allen's story by finding a key to apartment 8-B and as a result of Walters' arrival. Because officers of reasonable competence could disagree as to the constitutionality of their actions, the Officer Defendants are entitled to qualified immunity with respect to the search of Allen's bag and pockets.

(b) Search of Walter's Apartment

The Defendants deny that Officer Gonzalez took a key from Allen and used it to open the door to Walters' apartment. Viewing all factual disputes in the light most favorable to the non-moving party, the Court must accept Plaintiffs' version of the facts for the purpose of this summary judgment motion, namely that Officer Gonzalez opened the door to apartment 8-B using a key that was taken from Allen and stepped inside the apartment for five to fifteen seconds. (Allen Dep. at 86-87; Walters Dep. at 48-49.)

The right to be free from unreasonable searches of one's home is a clearly established right. Defendants do not assert that there were exigent circumstances or that Plaintiff Walters consented to a search of his apartment, and absent an exception, warrantless searches of private homes are presumptively unreasonable. Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998) (citing Payton v. New York, 445 U.S. 573, 586 (1980)). The United States Supreme Court has stated that "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton, 445 U.S. at 585-86 (quoting United States v. United States District Court, 407 U.S. 297, 313 (1972)). The Supreme Court has made it clear that "[i]n [no setting] is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home" and that "the Fourth Amendment has drawn a firm line at the entrance to the house." Id. at 589, 590. Therefore, any warrantless entry into Walters' apartment by Officer Gonzalez, if proved at trial, would be a violation of a clearly established constitutional right. Because the "firm line" around the physical dimensions of one's home has been clearly established for decades, law enforcement officers of reasonable competence could not disagree as to the constitutionality of Officer Gonzalez's alleged warrantless entry into Walters' apartment. Officer Gonzalez is therefore not entitled to qualified immunity with respect to the warrantless entry into Walters' apartment.

Only Plaintiff Walters has standing to assert a Fourth Amendment violation with respect to the alleged illegal search of his apartment. In order to have standing to challenge the search of a home on Fourth Amendment grounds, an individual challenging the search must demonstrate that he had a legitimate expectation of privacy in the premises "by showing that he owned the premises or that he occupied them and had dominion and control over them by leave of the owner." United States v. Watson, 404 F.3d 163, 166 (2d Cir. 2005) (citing United States v.

Villegas, 899 F.2d 1324, 1333 (2d Cir.1990)). Here, Allen was neither an owner nor a resident of Walters' apartment, and there is no evidence he had the "dominion and control" over the apartment necessary to confer standing.

**E.  Claims against New York Police Department and New York City Corporation Counsel**

The NYPD is not a suable entity. Carmody v. City of New York, No. 05 Civ. 8084 (HB), 2006 WL 1283125, at *2 (S.D.N.Y. May 11, 2006). All claims against the NYPD are dismissed from the case. All claims against the New York Corporation Counsel are also dismissed. In order to state a cause of action under § 1983, a plaintiff must (1) allege that some person has deprived him of a federal right and (2) allege that the person who has deprived him of that right acted under color of state or territorial law. See West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiffs have not put forth any evidence – or even alleged – that the New York City Corporation Counsel deprived Plaintiffs of a federal right or took any action whatsoever in connection with the events of June 1, 2007 that are the subject of this case.

### IV.  Conclusion

For the reasons stated above, Defendants' motion for summary judgment is granted in part and denied in part. With respect to Plaintiff Walters' claim that Officer Gonzalez entered his apartment in violation of Walters' Fourth Amendment rights, Defendants' motion for summary judgment is denied. Defendants' motion for summary judgment is granted in all other respects. Defendants Officer Vincent Ruiz, Officer Randys Figuereo, the New York City Police Department and the New York City Corporation Counsel are dismissed from this case. Because only Plaintiff Walters has standing to pursue the sole remaining claim, Plaintiff Ra Ptah Tarhaqa Allen is dismissed from this case.

IT IS SO ORDERED.

Dated: New York, New York
       May 4, 2010

                                                            Robert P. Patterson, Jr.
                                                                     U.S.D.J.

Copies of this Opinion sent to:

Ra Ptah Tarhaqa Allen, Plaintiff *Pro Se*
1694 Madison Avenue, #14G
New York, NY 10029
(by mail)

Leonard Walters, Plaintiff *Pro Se*
1694 Madison Avenue, #14G
New York, NY 10029
(by mail)

Brian Francolla, Asst. Corporation Counsel
City of New York, Law Department
100 Church Street
New York, NY 10007
Fax: 212-788-9776
(by fax)